**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:08CV140-02-V**
**(3:03CR222-V)**

```
KEITH BARNHART,                )
     Petitioner,               )
                               )
          v.                   )        O R D E R
                               )
UNITED STATES OF AMERICA,      )
     Respondent.               )
_____)
```

**THIS MATTER** is before this Court upon Petitioner's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence . . . ," filed March 27, 2008. For the reasons stated herein, Petitioner's Motion will be <u>dismissed</u> as time-barred.

### I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record of Petitioner's underlying criminal case, on December 16, 2003, he was charged with possession of a quantity of cocaine with the intent to distribute that substance, in violation of 21 U.S.C. § 841 (Count One), with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two), and with possession of a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count

Three)[1]. Also on that date, the Government filed an "Information Pursuant To Title 21 U.S.C. § 851," asserting that Petitioner previously had sustained a conviction for possession with intent to distribute cocaine and cocaine base in the United States District Court for the Northern District of Ohio.

On October 1, 2004, Petitioner entered into a written plea agreement by which he agreed to plead guilty to the two firearm charges set forth in Counts Two and Three of the Indictment. In particular, the parties' Plea Agreement provided, <u>inter alia</u>, that the Base Offense Level for the offense charged under § 922(g)(1) was 24; that Petitioner was subject to a four level increase pursuant to U.S. Sentencing Guidelines § 2K2.1(b)(5) for having possessed the subject firearm in connection with another felony offense; that no other enhancements were applicable to that offense; and that Petitioner's sentence for the offense charged under § 924(c)(1) had to be served consecutive to any other sentence which the Court imposed.

The Plea Agreement also contained Petitioner's waiver of his right to directly appeal his case on any ground; and his waiver of his right to collaterally challenge his conviction and/or sentence on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or on the ground that the Court's

---

[1] Although the Bill of Indictment listed this third charge as "Count Four," that error was corrected by an amendment pursuant to the Court's Order of December 19, 2003 (<u>see</u> 3:03CR222, document number 6).

Guidelines determinations were inconsistent with the stipulations set forth in the parties' Agreement.

On October 27, 2004, Petitioner appeared before the Court for a Plea & Rule 11 Hearing. On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that he fully understood what he was doing, and was proceeding on his own volition. After hearing Petitioner's answers to its numerous questions, the Court found that his guilty pleas were being intelligently and voluntarily tendered, and so the Court accepted the pleas.

Thereafter, on June 14, 2005, the Court conducted a Factual Basis & Sentencing Hearing in that matter. At the outset of that proceeding, Petitioner reiterated several of his earlier sworn assertions. Specifically, Petitioner reaffirmed that he understood the nature of the charges he was facing and the penalties they carried; that he was voluntarily tendering his guilty pleas because he, in fact, was guilty of the charges; and that he believed that he had been satisfactorily represented and advised by his attorney.

Next, the Court found, based upon the parties' stipulations, that there was a factual basis to support Petitioner's guilty pleas. Accordingly, the Court affirmed its acceptance of those pleas.

Thereafter, defense counsel objected to the proposed appli-

cation of the Career Offender enhancement, and put on three witnesses in support of his objections.  In sum, the three witnesses' testimony tended to establish that Petitioner had provided substantial assistance in the arrest of an individual who eventually confessed to having committed a murder; and that he was under treatment for depression, anxiety and drug addiction.  Defense counsel then argued that since the U.S. Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005) made the Guidelines advisory, the Court had discretion to depart downward from the Career Offender provisions and impose a seven year sentence for Petitioner.

For its part, the Government argued that although the Guidelines no longer were mandatory, they still were advisory; that the Career Offender provisions were promulgated with offenders such as Petitioner in mind; that Petitioner had established a pattern of disregarding the law; that Petitioner's repeated violation of the law and the conditions of his pre-trial release rendered him ineligible for a downward departure motion; and that Petitioner properly could have been sentenced as a Career Offender.

Ultimately, the Court denied defense counsel's request for a downward departure, but did agree to grant a 40-month variance from the Guidelines based upon Petitioner's cooperation.  The Court then sentenced Petitioner to a term of 102 months imprison-

ment on Count Two, and to a consecutive term of 120 months on Count Three. Petitioner timely noted his direct appeal to the Fourth Circuit Court of Appeals.

On appeal, newly appointed appellate counsel filed a brief pursuant to the holding in Anders v. California, 386 U.S. 738 (1967), but also contended that Petitioner was entitled to have the Government specifically perform its promise to seek a downward departure for his substantial assistance; and that the waiver in Petitioner's Plea Agreement did not preclude his right to appeal the Government's alleged breach of that promise. United States v. Barnhart, 198 F. App'x 317, 318 (4th Cir. 2006). In addition, Petitioner filed his own supplemental brief, arguing that his guilty pleas were involuntarily tendered because he was led to believe that his sentences would be run concurrently;[2] that he was subjected to ineffective assistance of counsel; that he should not have been convicted under § 924(c)(1); and that there was no factual basis to support that conviction. Id. at 318-20.

However, the Circuit Court found that the parties' Agreement unambiguously had given the Government sole discretion in deciding whether or not to seek a downward departure. Id. at 318-19.

---

[2]The Appellate Court noted that the magistrate judge who had conducted Petitioner's Plea and Rule 11 Hearing had "accede[d] to [defense] counsel's suggestion that the sentences would be concurrent when, by statute, the sentence on the § 924(c) count was required to be run consecutively to any other sentence imposed." 198 F. App'x at 319.

5

Therefore, since Petitioner had not alleged any improper motive for the Government's decision not to seek a departure, he had no right even to challenge that decision. Id. at 318. Moreover, the Court found that Petitioner's use of illegal drugs had freed the Government from "any obligation it had under the plea agreement." Id. at 318-19.

As for Petitioner's first supplemental claim, the Circuit Court noted that because he had not objected or sought to withdraw his guilty plea, it could only review the issue for plain error Id. at 319. Further, the Court noted that prior to the misstatement, Petitioner already had signed a Plea Agreement stating that he would receive consecutive, not concurrent sentences, and he eventually received a sentence which was below the maximum term of life imprisonment, which term he had been advised of by both his Agreement and the magistrate judge. Id. Therefore, the Court determined that any confusion which may have resulted from the misstatement had not prejudiced Petitioner. Id.

As for Petitioner's claim that trial counsel was ineffective, the Court of Appeals found that there was no conclusive evidence to support that allegation. Id. Therefore, the Court declined to adjudicate that issue in Petitioner's direct appeal. Id. The Court also rejected Petitioner's claim that he should not have been convicted under § 924(c)(1) since he was not also con-

6

victed of the underlying drug offense.  Id. at 319-20.  Rather, the Court relied upon the rule that "'a defendant's conviction under § 924(c) does not depend on his being convicted -- either previously or contemporaneously -- of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt.'"  Id. at 320; quoting United States v. Hopkins, 310 F.3d 145, 152 (4th Cir. 2002).  Thus, since Petitioner had pled guilty to the subject offense, the Circuit Court found that this Court had before it all of the information necessary to convict Petitioner of that crime.  Id.

Moreover, the Circuit Court rejected Petitioner's claim that there was no factual basis for his § 924(c) conviction finding, instead, that he actually had waived his right even to raise that claim by virtue of his voluntary guilty plea.  Id.  Accordingly, the Circuit Court affirmed Petitioner's convictions and sentences.  Id.

Thereafter, Petitioner sought certiorari review for his case in the U.S. Supreme Court.  However, that Court denied his petition.  See Barnhart v. United States, 127 S.Ct. 1034 (Jan. 8, 2007).

Now, Petitioner has returned to this Court with the instant Motion to Vacate, raising the sole claim that he actually is innocent of the § 924(c)(1) offense to which he pled guilty. More particularly, Petitioner argues that he "never 'used' or

7

'carried' a gun as proscribed in § 924(c)(1), nor did [he] have a gun on his person or in his car when the police pulled him over and found drugs . . . ." Petitioner contends that police found the gun and an additional stash of cocaine when they executed a search warrant for his home; and that the gun had been used "as a means of protection, a self-defense protection, not drug or money protection." Therefore, Petitioner asserts that he did not violate any provision of the subject statute.

Notwithstanding whether or not Petitioner's claim has any merit, or his argument that such claim was timely filed, it is apparent to this Court that the instant Motion to Vacate is time-barred.

## II. **ANALYSIS**

Indeed, as noted on Petitioner's form Motion to Vacate, in 1996 Congress enacted the Antiterrorism and Effective Death Penalty Act (hereafter, the "AEDPA"). Among other things, the AEDPA amended 28 U.S.C. §2255 by imposing a 1-year statute of limitations period for the filing of a motion to vacate. The amendment provides:

A 1-year period of limitation applies to a motion under this section. The limitation period shall run from the latest of–

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed,

if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

According to the underlying record, Petitioner's convictions for the two firearm offenses became final on January 8, 2007 when the U.S. Supreme Court denied his <u>certiorari</u> petition. <u>See</u> <u>United States v. Segers</u>, 271 F.3d 181, 182 (4th Cir. 2001) (finding that denial of writ of <u>certiorari</u> renders conviction final for purposes of section 2255 statute of limitations), <u>cert. denied</u>, 535 U.S. 943 (2002). Thus, Petitioner had up to January 8, 2008, in which to file the instant Motion to Vacate. Obviously, he did <u>not</u> file his Motion by that date.

Rather, Petitioner filed his Motion to Vacate approximately 15 months after his case became final, but he properly has recognized that his Motion likely would be construed as time-barred. Indeed, Petitioner's form-Motion to Vacate expressly admonished[3]

---

[3]In January 2002, the Fourth Circuit Court of Appeals decided the case of <u>Hill v. Braxton</u>, 277 F.3d 701, 706 (4th Cir. 2002). In <u>Hill</u>, the Court concluded that "when a federal <u>habeas</u> court, prior to trial, perceives a <u>pro-se</u> [petition or motion to vacate] to be untimely and the state has not filed a motion to dismiss based upon the one-year limitations period, the [district] court must warn the petitioner that the case is subject to dismissal . . . absent a sufficient explanation." Consistent with that requirement, in December 2004, the Administrative Office of the Courts modified the federal <u>habeas</u> form to comply with <u>Hill's</u> notice provision. The new form now includes a section which directs the petitioner to address the "timeliness of [his/her] Petition. In particular, question 18 on the new form advises the petitioner that if his/her conviction became final more than one year before the time

9

him that if he was filing his Motion more than one year after his Judgment had become final, such Motion could be construed as time-barred. Thus, Petitioner set out to establish that his claim timely has been presented. However, Petitioner did not attempt to establish the existence of any government-created impediment or other matter which precluded his filing this Motion at an earlier date. Therefore, he cannot rely upon any of the provisions of the AEDPA to show that his Motion timely was filed. See 28 U.S.C. §2255, subparts 2 through 4.

Further, while it is well settled that courts have the authority to toll the limitations period on equitable grounds, Petitioner also has failed to show that he is entitled to application of those principles. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (noting that equitable tolling generally is available only where petitioner was prevented from asserting claims by wrongful conduct of the government, or where extraordinary circumstances beyond petitioner's control made it impossible to file claims in timely manner.). See also United States v. Sosa, 364 F.3d 507, 511-13 (4th Cir. 2004) (discussing the requirements for equitable tolling.).

On the contrary, in response to the question on the form, Petitioner reports that he:

---

that the motion is being submitted, he/she "must explain why the one-year statute of limitations contained in 28 U.S.C. §2255 [also set forth on the form] does not bar [his/her] motion."

> was not aware that his conviction was
> final because neither the Supreme Court
> nor [his] attorney notified [him] of the
> Supreme Court's decision; (2) [he] would
> contact his attorney to find out if he
> heard anything from the Supreme Court and
> counsel would say "be patient, as soon
> as I find out something I or the Supreme
> Court will contact you"; this turned out
> to be not true because [he] finally upon
> advice from a jail house lawyer did a sta-
> tus check and found out that the Supreme
> Court been denied [his] Writ of Certiorari,
> in which if [he] would have known this then,
> [he] would have filed a 2255 motion 2 or 3
> months after notification. Therefore, [he]
> ask that this court at least hear [his
> Motion] on his merits . . . .

Notably, Petitioner does not bother, either in his Motion to Vacate or in his Affidavit, to advise the Court of the exact date on which he purportedly learned that his certiorari petition had been denied. Such an omission is highly suspicious under these circumstances, particularly when, based upon his own allegations, that date would have been known by Petitioner and its importance would have been obvious to him. In any event and, perhaps, not surprisingly, excuses of this nature previously have been rejected by the courts.

To be sure, in Rouse v. Lee, 339 F.3d 238, 246-47(4th Cir. 2003)(en banc), the Circuit Court rejected an argument that a state petitioner's statute of limitations under the AEDPA did not begin to run, or otherwise was equitably tolled, on the basis of his attorney's "slight miscalculation" of his filing deadline. More critically here, the Rouse Court also found that the "limi-

tations period of the AEDPA [] runs from the date on which the judgment became final . . . not from the date on which Rouse was served with or, . . . merely received notification of the final judgment." Id. at 245 (internal quotations and citations omitted.)

Thereafter, in response to a request for equitable tolling based upon an assertion identical to Petitioner Barnhart's -- that the attorney's failure to notify him of the denial of his certiorari petition required that the limitations period be tolled -- a district court relied upon the Rouse decision and found that "even if the petitioner never received the notice of denial from his attorney, equitable tolling does not excuse the untimeliness of his petition." Jackson v. United States, 319 F. Supp. 2d 672, 675 (E.D. Va. 2004). To begin, the Jackson Court noted that it was unaware of any authority which "suggest[ed] that a petitioner's unawareness of the finality of his conviction constitutes the necessary extraordinary and external circumstances that warrant equitable tolling." Id. at 675.

The Jackson Court then found, based upon principles of agency, that a defense attorney's actions are attributable to his client and, therefore, do not "present circumstances external to the party's own conduct" so as to justify equitable tolling. Id. at 676. Moreover, that Court further determined that even if counsel's conduct was not attributable to his client, the peti-

12

tioner still could not establish an entitlement to equitable tolling. Id. That is, the Court stated that since there is no entitlement to counsel in federal habeas proceedings, an attorney error -- such as the failure to notify a client of the denial of his certiorari petition -- would not constitute a ground upon which equitable tolling could be applied "because 'there can only be constitutional ineffective assistance of counsel where there is a constitutional right to counsel.'" Id. at 676-77; quoting Coleman v. Thompson, 501 U.S. 722, 752 (1991).

### III. CONCLUSION

The AEDPA requires, among other things, that petitioners seeking to bring motions to vacate under 28 U.S.C. §2255 do so within the time limitations prescribed by that statute. Here, Petitioner has failed to meet that requirement, and he has failed to establish any other basis for construing his Motion as timely filed. Accordingly, the instant Motion to Vacate must be dismissed as time-barred.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the instant Motion to Vacate is **DISMISSED** as untimely filed.

**SO ORDERED.**

Signed: April 3, 2008

Richard L. Voorhees
United States District Judge